Allen W. Burton (Bar No. 020742001)
Jonathan Rosenberg (*pro hac vice*)
William Sushon (*pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
aburton@omm.com
jrosenberg@omm.com
wsushon@omm.com

*Counsel for Defendants Citigroup
Global Markets Inc., Barclays
Capital Inc.,  Goldman Sachs & Co. LLC,
and Morgan Stanley & Co. LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE KORNIT DIGITAL LTD. SECURITIES LITIGATION | Case No. 2:23-CV-888-MCA-AME |

## BRIEF IN SUPPORT OF THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL BACKGROUND...........................................................................4

ARGUMENT ...........................................................................4

    I.     PLAINTIFFS HAVE FAILED TO PLEAD STANDING UNDER THE SECURITIES ACT.......................................................4

    II.    THE SECURITIES ACT ALLEGATIONS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION...................9

         A.    The Securities Act Counts' Falsity Allegations Are Utterly Conclusory...............................................................9

         B.    The Challenged Statements in the SPO Materials Are Not Actionable in Any Event for the Reasons Explained in the Kornit Defendants' Motion to Dismiss.............................11

CONCLUSION.........................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ARIAD Pharmaceuticals Securities Litigation.*,
  842 F.3d 744 (1st Cir. 2016)..................................................................................5

*Barnes v. Orofsky*,
  373 F.2d 269 (2d Cir. 1967)...................................................................................7

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
  94 F.Supp.3d 1035, 1057 (D. Minn. 2015)............................................................5, 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................1

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ...................................................................... *passim*

*In re Constar Int'l Inc. Sec. Litig.*,
  2008 WL 614551 (E.D. Pa. Mar. 4, 2008)..............................................................4

*In re Cosi, Inc. Sec. Litig.*,
  379 F.Supp.2d 580 (S.D.N.Y. 2005)......................................................................8

*De Vito v. Liquid Holdings Grp., Inc.*,
  2018 WL 6891832 (D.N.J. Dec. 31, 2018)....................................................4, 5, 7, 8

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995)................................................................................................8

*Hemmer Grp. v. Sw. Water Co.*,
  663 F. App'x 496 (9th Cir. 2016) ..........................................................................7

*Ho v. Duoyan Glob. Water, Inc.*,
  887 F.Supp.2d 547 (S.D.N.Y. 2012)......................................................................6

*In re Karyopharm Therapeutics, Inc. Sec. Litig.*,
  552 F. Supp. 3d 77 (D. Mass. 2021) ......................................................................6

*Lowthorp v. Mesa Air Grp., Inc.*,
   2021 WL 3089118 (D. Ariz. July 22, 2021) ..........................................................8

*N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*,
   2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010) ........................................................8

*Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*,
   2022 WL 1449184 (7th Cir. May 9, 2022) ..............................................................6

## TABLE OF AUTHORITIES
### (Continued)

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006)......................................................................................................4, 5

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) ...............................................................................6, 8

*Welgus v. TriNet Grp., Inc.*,
    2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ........................................................................6, 8

*West Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
    495 F. Supp. 3d 622, 669 (N.D. Ill. 2020) ..............................................................................6

## PRELIMINARY STATEMENT

The Underwriter Defendants[1] join in the Kornit Defendants' motion to dismiss the CAC and respectfully submit this separate brief to augment and highlight the arguments for dismissal of the CAC's Section 11 and 12 claims (Counts III and IV, respectively), the only claims against the Underwriter Defendants.

Since the Supreme Court decided *Bell Atlantic Corp. v. Twombly* in 2007,[2] the most basic requirement for any complaint is that it set forth a plausible claim for relief, including plausible allegations that the plaintiffs have standing to pursue their claims.  The CAC fails this most basic test.  It lacks plausible factual allegations that would establish any plaintiff's standing to sue under Sections 11 and 12 of the Securities Act of 1933, and it nowhere pleads facts that would show

---

[1] As used in this brief, (i) "CAC" shall mean the Consolidated Amended Complaint in this action (Dkt. No. 23); (ii) "Indiana" shall mean plaintiff Indiana State Police Pension Trust; (iii) "Kornit Defendants" shall mean defendants Kornit Digital, Ltd., Ronen Samuel, Alon Rozner, Guy Avidan, Yuval Cohen, Gabi Seligsohn, Ofer Ben-Zur, Stephen Nigro, Lauri Hanover, Alon Lumbroso, Yehosua Nir, and Dov Ofer; (iv) "Kornit Mem. at __" shall mean the Kornit Defendants' Brief in Support of Their Motion to Dismiss; (v) "SPO" shall mean the secondary public offering of Kornit ordinary shares that occurred on or about November 19, 2021; (vi) "SPO Materials" shall mean the registration statement and prospectus for the SPO; and (vii) "Underwriter Defendants" shall mean defendants Citigroup Global Markets Inc., Barclays Capital Inc., Goldman Sachs & Co. LLC, and Morgan Stanley & Co. LLC.  Unless otherwise specified, all emphasis is added and all citations and quotations are omitted.

[2] 550 U.S. 544 (2007).

1

that any of the handful of allegedly misleading statements in the SPO Materials—the sole basis for the CAC's Securities Act claims—were false. The CAC should therefore be dismissed.

*Standing.* To establish standing under Section 11, plaintiffs must plead and prove that they either purchased their Kornit shares in the SPO itself, or else trace their shares through the chain of ownership to show that those shares were originally purchased in the SPO. This task is "often impossible" in circumstances like these, where a plaintiff has purchased shares after multiple offerings.[3] Plaintiffs' sole attempt to satisfy this demanding test is to allege that they purchased their shares "in and/or traceable to" the SPO, an incantation that numerous courts have condemned as too conclusory to satisfy *Twombly*'s plausibility standard. And the mere that fact one of the plaintiffs purchased shares on the SPO date at the SPO price from one of the SPO underwriters is not enough to plead a purchase in the SPO because, as the Ninth Circuit observed in *Century Aluminum*, such allegations are consistent with the underwriter "having filled the

---

[3] *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107-08 (9th Cir. 2013) ("[E]xperience and common sense tell us that when a company has offered shares under more than one registration statement, aftermarket purchasers usually will *not* be able to trace their shares back to a particular offering.") (emphasis in original).

2

order with previously issued shares it was holding," providing an "obvious alternative explanation."[4]

The CAC likewise fails to plead any plaintiff's standing to bring a Section 12(a)(2) claim. Only investors who purchased directly in the SPO itself have standing to pursue such claims; secondary market purchasers cannot. Yet no plaintiff unequivocally alleges a purchase in the SPO itself—rather, each plaintiff claims only a purchase "in and/or traceable to" the SPO. And as with the Section 11 claim, mere allegations of a purchase from an underwriter at the SPO price on the SPO date do not plausibly plead a purchase "in" the SPO.

*Falsity*. The CAC also fails to plead that any of the challenged statements in the SPO Materials was false. Plaintiffs make abundantly clear in the CAC's Securities Act counts that they rely solely on allegations in "section XIII," eschewing the confidential-witness and other falsity allegations in the Exchange Act portion of the CAC. But section XIII makes only conclusory allegations that the challenged statements in the SPO materials were false, allegations that *Twombly* requires this Court to disregard in evaluating the claims.

But even if plaintiffs had incorporated their Exchange Act allegations, the Securities Act claims would still fail because each challenged statement is (i) an inactionably vague statement of optimism, (ii) not actually alleged to be false, or

---

[4] *Id.* at 1108-09.

(iii) a protected forward-looking aspirational statement that was accompanied by appropriately tailored warnings and for which plaintiffs fail to plead facts showing that Kornit did not believe the statement to be true.

## FACTUAL BACKGROUND

The Underwriter Defendants adopt and incorporate by reference the factual background in the Kornit Defendants' motion to dismiss.  (Kornit Mem. at 4–10.)

## ARGUMENT

### I.    PLAINTIFFS HAVE FAILED TO PLEAD STANDING UNDER THE SECURITIES ACT.

*Section 11*.  Pleading Section 11 standing requires plaintiffs to allege facts plausibly showing that they either purchased securities (i) directly in the stock offering or (ii) "traceable to an offering that was covered by the allegedly false registration statement."[5]  All the plaintiffs attempt to satisfy this requirement by alleging that they "purchased Kornit ordinary shares in and/or traceable to the [SPO]."  (CAC ¶¶ 265–68.)

---

[5] *In re Constar Int'l Inc. Sec. Litig.*, 2008 WL 614551, at \*2 (E.D. Pa. Mar. 4, 2008)); *accord Century Aluminum*, 729 F.3d at 1106 (holding plaintiff has Section 11 standing if it "purchased shares in the offering made under the misleading registration statement," or in aftermarket "provided they can trace their shares back to the relevant offering"); *see also In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006) (holding that Section 11 confers standing on investors who purchased securities issued "pursuant to" or "traceable to" allegedly misleading registration statement); *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at \*15 (D.N.J. Dec. 31, 2018) (same).

At least one court in this district has concluded that nearly identical conclusory allegations that a plaintiff purchased shares "pursuant to and/or traceable to" an allegedly misleading registration statement are insufficient to plead Section 11 standing where the plaintiff purchased after a secondary offering.[6] This is because, unlike a situation in which tracing is easy because "a company's shares have been issued in a single offering" and "there is only one place the shares could have come from," where a plaintiff has purchased after multiple offerings, the plaintiff "'must prove that [its] shares were issued under the allegedly false or misleading registration statement, rather than some other registration statement.'"[7] As the court noted, this is consistent with both the Ninth Circuit's approach in *Century Aluminum* (*supra* n.3), which the court specifically endorsed, as well as the First Circuit's holding in *In re ARIAD Pharmaceuticals Securities Litigation*.[8] The court also concluded that the Third Circuit's contrary holding in *Suprema Specialties* was no longer good law because it was decided under "notice pleading" standards that have been superseded for nearly two decades.[9]

---

[6] *See De Vito*, 2018 WL 6891832, at *17 (rejecting as conclusory allegations of purchases "pursuant to and/or traceable to" offering ).

[7] *Id.* at *15 (quoting *Century Aluminum*, 729 F.3d at 1106).

[8] 842 F.3d 744 (1st Cir. 2016).

[9] *See De Vito*, 2018 WL 6891832, at *17 (concluding that "broad, boilerplate" standing allegations are "sufficient no longer after *Twombly* and *Iqbal*"); *see also Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, 94 F.Supp.3d 1035, (….continued)

Under the *Twombly* standard, courts throughout the country have routinely found conclusory standing allegations such as those made here to be inadequate in the secondary offering context.[10]  This is because plaintiffs who purchase shares after a secondary offering simply cannot tell whether their shares can be traced to

---

1057 (D. Minn. 2015) (noting that "that the *Suprema* case . . . [was] decided before *Twombly* and *Iqbal*, which heightened general pleading standards" and adopting more stringent *Century Aluminum* standard).

[10] *See, e.g.*, *In re Karyopharm Therapeutics, Inc. Sec. Litig.*, 552 F. Supp. 3d 77, 92 (D. Mass. 2021) (holding insufficient to plead standing allegations that plaintiffs' shares "'are traceable and/or were purchased pursuant to' the secondary offerings"); *West Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 669 (N.D. Ill. 2020) (finding inadequate allegation that plaintiff "acquired Conagra shares pursuant and/or traceable to the Offering Documents for the SPO"), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, 2022 WL 1449184 (7th Cir. May 9, 2022); *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *15 (N.D. Cal. Jan. 17, 2017) (holding allegations stock was purchased "pursuant to and traceable to the Second Offering Registration Statement" insufficient to plead Section 11 standing); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1055 (N.D. Cal. 2016) (finding allegation that plaintiff purchased stock "pursuant and/or traceable to the Registration Statement" for secondary offering insufficient to plead Section 11 standing); *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, 94 F.Supp.3d 1035, 1057 (D. Minn. 2015) (rejecting argument that "simply pleading that the shares were purchased 'pursuant and/or traceable to' the misleading registration statement is enough to survive a motion to dismiss"); *see also Ho v. Duoyan Glob. Water, Inc.*, 887 F.Supp.2d 547, 561 (S.D.N.Y. 2012) (finding standing inadequately pleaded because "although Plaintiffs allege that they purchased pursuant to and/or traceable to both the IPO and the SPO, they do not offer any facts to support their conclusory statements that their shares can be traced to the SPO").

6

any particular offering.[11]  As the Ninth Circuit explained in *Century Aluminum*, "'most trading is done through brokers who neither know nor care whether they are getting newly registered or old shares,' and 'many brokerage houses do not identify specific shares with particular accounts but instead treat the account as having an undivided interest in the house's position.'"[12]

Indiana's certification that it purchased Kornit stock from one of the Underwriter Defendants on the SPO date and at the SPO price (CAC Ex. 1) cannot bridge this gap.  While these alleged facts make it possible that Indiana purchased the shares in the SPO, an "obvious alternative explanation" exists:  "they could instead have come from the pool of previously issued shares."[13]  In fact, if Indiana had purchased in the SPO itself, it would have been easy enough to say so.  But Indiana did not.  Because Indiana's allegations are "merely consistent" with an assertion that its shares were traceable to the secondary offering, the CAC does not plausibly plead Indiana's standing, as Rule 8 requires.[14]

---

[11] *Century Aluminum*, 729 F.3d at 1107; *see also Hemmer Grp. v. Sw. Water Co.*, 663 F. App'x 496, 498 (9th Cir. 2016) (finding shares purchased from a "fungible mass" not traceable to a registration statement).

[12] *Century Aluminum*, 729 F.3d at 1107 (quoting *Barnes v. Orofsky*, 373 F.2d 269, 271–72 (2d Cir. 1967)).

[13] *Century Aluminum*, 729 F.3d at 1108 (quoted in *De Vito*, 2018 WL 6891832, at *17).

[14] *See Century Aluminum*, 729 F.3d at 1108 (holding that allegations plaintiff purchased shares on secondary offering date shows only possibility that tracing (….continued)

7

*Section 12(a)(2)*.  Pleading standing under Section 12(a)(2) requires allegations that a plaintiff purchased securities *in* the public offering,[15] i.e., "by means of a prospectus," which, as the Supreme Court ruled in *Gustafson*, limits Section 12's application to purchases in a public offering, as opposed to the post-offering secondary market.[16]  Thus, unlike Section 11, even stock purchases "traceable to" a particular offering cannot provide Section 12 standing, as such purchases necessarily occur in the secondary market.[17]  But no lead plaintiff

---

requirement could be satisfied, not required plausible basis); *see also Magnachip*, 167 F. Supp. 3d at 1055 (finding certification of stock purchases on secondary offering day and price insufficient and "merely consistent with" purchases traceable to secondary offering)

[15] *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 577 (1995) (limiting Section 12 claims to those who purchased in the offering).

[16] *Id*.

[17] *See Lowthorp v. Mesa Air Grp., Inc.*, 2021 WL 3089118, at *13 (D. Ariz. July 22, 2021) ("The Amended Complaint alleges that the Pension Fund purchased securities 'pursuant and/or traceable to the IPO.'  This 'conclusory allegation[ ] [is] insufficient to establish standing under Section 12(a)(2).'"); *Welgus*, 2017 WL 6466264, at *26 (distinguishing between secondary-market purchases "traceable to" and in offering); *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, 2010 WL 1473288, at *4 (S.D.N.Y. Mar. 29, 2010) ("The Complaint alleges only that Plaintiff purchased Certificates 'pursuant and traceable to' the Offering Documents. This, however, is insufficient to assert standing for Section 12 claims."); *In re Cosi, Inc. Sec. Litig.*, 379 F.Supp.2d 580, 589 (S.D.N.Y. 2005) (rejecting as insufficient allegations that plaintiff had standing based on alleged purchase "pursuant to or traceable to" the challenged prospectus); *see also De Vito*, 2018 WL 6891832, at *16 n.15 (noting that Second and Fourth Circuits have "held that, without more, simply invoking 'pursuant and/or traceable' to language is insufficient" to plead Section 12(a)(2) standing "under *Iqbal* and *Twombly*").

alleges a purchase in the SPO, instead relying on equivocal allegations that their Kornit stock purchases were "in *and/or* traceable to the SPO."  And just as with Section 11 standing, Indiana's allegations of a purchase from an underwriter at the SPO price on the SPO date leave open the obvious possibility that the shares came from the pre-existing pool.  *See* p. 7, *supra.*  The Section 12(a)(2) claim therefore must also be dismissed for failure to plead standing.

## II.   THE SECURITIES ACT ALLEGATIONS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION.

### A.   The Securities Act Counts' Falsity Allegations Are Utterly Conclusory.

As the Kornit Defendants show (*see* Kornit Mem. at 45–49), the Securities Act claims also fail on the merits, because the CAC fails to plead that the challenged statements in the SPO Materials were false.  Significantly, each of the Securities Act counts incorporates by reference only the allegations in "Section XIII," which begins at paragraph 261 of the CAC.  (CAC ¶¶ 297, 306.)  Thus, none of the allegations in the Exchange Act portion of the CAC—including the confidential witness allegations—should be considered in determining whether the CAC states a Securities Act claim.

Without the Exchange Act falsity allegations (which are inadequate in any event, as the Kornit Defendants have explained, *see* Kornit Mem. at 10–36), the CAC is reduced to quoting four challenged statements from the SPO materials and

9

stating in the most conclusory terms that those statements were false.  (*See* CAC ¶¶ 287–96.)

- The CAC challenges the SPO materials' warning that Kornit's "systems, ink, and other consumables, and associated software may contain undetected errors or defects when first introduced or as new versions are released," and that such problems could "cause us to incur significant warranty and repair costs, divert the attention of our engineers from our product development and customer service efforts and harm our reputation."  (*Id.* ¶ 288.)  But the CAC's sole allegation of why this statement is false is because that risk "had already materialized."  (*Id.* ¶ 289.)

- Similarly, the CAC's sole basis for challenging a statement concerning the quality and low cost of ownership of Kornit's products is to allege that "Kornit's products suffered from significant defects and were significantly less productive than its competitors' products," and "[a]s a result of the significant defects and repair costs, . . . the total cost of ownership of those products was significantly higher than Kornit's customers had been led to believe."  (*Id.* ¶¶ 290–92.)

- Plaintiffs complain that a statement about Kornit's aspiration to "make the appropriate investments in . . . services support" and to "strive to . . . deliver[] best-in-class customer experience" was false, simply because "Kornit's attempt to turn its service business into a profit center materially impaired its ability to adequately service its customers."  (*Id.* ¶¶ 293–94.)

- The CAC's sole support for its allegation that Kornit's cloud platform was not "robust" is an unattributed quotation that Kornit was "constantly working on it and figuring out the integration" and an allegation that Kornit "admitted" in an unspecified statement "after the Class Period" that "the Company was still working on stabilizing the platform."  (*Id.* ¶ 296.)

What is missing in each of these allegations are facts that support the conclusions.

How, for example, did the risk of defects in Kornit's products allegedly materialize?  What were the significant defects that allegedly elevated the cost of ownership of Kornit's products?  What was Kornit doing to "turn its service

business into a profit center" and how did that supposedly impair its ability to service customers? The CAC's Securities Act allegations simply do not say. They are thus precisely the kind of conclusions, bereft of factual support, that *Iqbal* and *Twombly* require the Court to disregard. (*See* Kornit Mem. 45–49.)

**B.    The Challenged Statements in the SPO Materials Are Not Actionable in Any Event for the Reasons Explained in the Kornit Defendants' Motion to Dismiss.**

As the Kornit Defendants show, even if the CAC had incorporated the Exchange Act allegations into the Securities Act counts, the CAC would still fail to state a claim concerning any of the challenged statements in the SPO Materials because each such statement falls into one or more categories: (i) it is not actually alleged to be false; (ii) it was not misleading because it disclosed any allegedly omitted information; (iii) it is an inactionable vague statement of optimism; and (iv) it is protected by the PSLRA safe harbor for forward-looking statements. (*See* Kornit Mem. at 45–49.) Thus, claims concerning these statements should be dismissed, in any event.

## CONCLUSION

The CAC's Securities Act counts III and IV fail to plead the most fundamental requirements for Section 11 and 12 claims—plaintiffs' standing and an actionable false statement. The Underwriter Defendants should therefore be dismissed from this case.

Dated:  December 21, 2023

Respectfully submitted,

/s/  Allen W. Burton

Allen W. Burton
Jonathan Rosenberg (*pro hac vice*)
William Sushon (*pro hac vice*)
O'MELVENY & MEYERS LLP
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
aburton@omm.com
jrosenberg@omm.com
wsushon@omm.com

*Counsel for Defendants Citigroup
Global Markets Inc., Barclays Capital
Inc., Goldman Sachs & Co. LLC, and
Morgan Stanley & Co. LLC*

12