Allen W. Burton (Bar No. 020742001)
Jonathan Rosenberg (*pro hac vice*)
William Sushon (*pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
aburton@omm.com
jrosenberg@omm.com
wsushon@omm.com

*Counsel for Defendants Citigroup
Global Markets Inc., Barclays
Capital Inc.,  Goldman Sachs & Co. LLC,
and Morgan Stanley & Co. LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE KORNIT DIGITAL LTD. SECURITIES LITIGATION | Case No. 2:23-CV-888-MCA-AME |

## REPLY BRIEF IN FURTHER SUPPORT OF
## THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

**Page**

ARGUMENT ............................................................................................................1

    I.     PLAINTIFFS FAIL TO PLEAD SECURITIES ACT STANDING...................................................................................................1

    II.    THE CAC's SECURITIES ACT ALLEGATIONS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION.............................................................................................5

        A.    Plaintiffs Identify No Factual Allegations Supporting a Claim that Any Challenged Statement in the SPO Materials Was False. ..................................................5

        B.    The Challenged Statements in the SPO Materials Are Not Actionable in Any Event............................................6

CONCLUSION .......................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Caiafa v. Sea Containers Ltd.*,
  331 Fed. Appx. 14 (2d Cir. 2009) ...........................................................................5

*Feiner v. SS&C Technologies, Inc.*,
  47 F. Supp. 2d 250 (D. Conn. 1999) .......................................................................4

*In re Sterling Foster & Co., Inc. Sec. Litig.*,
  222 F. Supp. 2d 216 (E.D.N.Y. 2002)......................................................................4

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) .....................................................................................3

*In re Valeant Pharmaceuticals International, Inc. Securities Litigation*,
  2017 WL 1658822 (D.N.J. Apr. 28, 2017) ..............................................................3

*Jedrzejczyk v. Skillz, Inc.*,
  2022 WL 2441563 (N.D. Cal. July 5, 2022) ............................................................2

*Johnson v. East Orange VA Med. Ctr.*,
  2023 WL 2770423 (D.N.J. Apr. 4, 2023)..................................................................7

*Primo v. Pacific BioSciences of California, Inc.*,
  940 F. Supp. 2d 1105 (N.D. Cal. 2013) ...................................................................4

*Sang Geoul Lee v. Won II Park*,
  720 Fed. App'x 663 (3d Cir. 2017)...........................................................................7

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
  243 F. Supp. 3d 1109 (E.D. Cal. 2017).....................................................................3

*Thomas v. Magnachip Semiconductor Corp.*,
  167 F. Supp. 3d 1029 (N.D. Cal. 2016) ...................................................................2

*West Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
  495 F. Supp. 3d 622 (N.D. Ill. 2020)........................................................................3

## Rules

17 C.F.R. 230.174(b) .....................................................................................................4

The Underwriter Defendants[1] join in the Kornit Defendants' reply in further support of their motion to dismiss the CAC, and write separately regarding the Section 11 and 12 claims, the only claims against the Underwriter Defendants.

**ARGUMENT**

**I.      PLAINTIFFS FAIL TO PLEAD SECURITIES ACT STANDING.**

*Section 11*:  As the Underwriter Defendants have shown, conclusory allegations, like the CAC's, that a plaintiff purchased stock "pursuant and/or traceable to" a secondary public offering are insufficient to plead Section 11 standing.  (UW Mem. 4–7.)  Even allegations that a plaintiff purchased shares on the SPO date at the SPO price are insufficient, because they merely suggest a purchase in the SPO was *possible*, whereas the purchase could easily have been made from the previously-issued pool of 45,988,613 shares, rather than the 3,042,845 issued in the SPO.[2]  (*Id.* 7–8.)

---

[1] Unless specified otherwise, (i) capitalized terms shall have the meaning ascribed to them in the Underwriter Defendants' brief in support of their motion to dismiss ("UW Mem.," ECF No. 36) and (ii) all emphasis is added and all citations and quotations are omitted.  "Kornit Reply" means the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Complaint, ECF No. 35.  "Opposition" means Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, ECF No. 37.

[2] *See* Polubinski Declaration (ECF No. 34-2), Exhibit 1 cover (noting 45,988,613 shares outstanding as of December 31, 2020); CAC ¶ 286 (alleging 3,042,845 shares sold in SPO).

Plaintiffs argue that this is not the standard, simply because one case the Underwriter Defendants cited (*Century Aluminum*) did not involve purchases on the secondary offering date at the secondary offering price.  (Opp. 59.)  But contrary to plaintiffs' contention, courts applying the *Twombly* pleading standard have held that even a purchase on the secondary offering date at the secondary offering price is inadequate to plead Section 11 standing unless the plaintiff unequivocally alleges a purchase "in" the offering itself.[3]  As one court explained, this result is dictated by *Century Aluminum*'s reasoning:

> Given the volume of other shares on the market from the prior offering, even alleging that someone bought shares on the day of the [secondary] Offering at the offering price is inadequate to establish statutory standing at this stage, due to a significant possibility that the shares purchased originated from the prior offering but were being traded at the secondary offering price.[4]

The cases plaintiffs cite (Opp. 59 n.19) do not undermine this principle.  Those courts found standing adequately pleaded because the plaintiffs there alleged

---

[3] *See, e.g., Jedrzejczyk v. Skillz, Inc.*, 2022 WL 2441563, at *7 (N.D. Cal. July 5, 2022) (following rule that "allegation that [plaintiffs] purchased their shares on the day of the secondary offering and for the same offering price is insufficient to establish statutory standing"); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1055 (N.D. Cal. 2016) (finding certification of stock purchases on secondary offering day and price insufficient and "merely consistent with" purchases traceable to secondary offering).

[4] *Jedrzejczyk*, 2022 WL 2441563, at *7.

2

purchases "*in*" the challenged offering itself,[5] rather than equivocally alleging purchases "in and/or traceable to" a secondary offering, as plaintiffs do here. Plaintiffs here must know whether they purchased in the SPO, and their failure to include that allegation strongly suggests they cannot in good faith do so.

Plaintiffs' reliance on *In re Valeant Pharmaceuticals International, Inc. Securities Litigation*[6] is likewise misplaced.  (Opp. 59.)  *Valeant* erroneously relied on *In re Suprema Specialties, Inc. Securities Litigation*,[7] a case that (as the Underwriters have explained) is no longer good law because it was decided under the since discarded "notice pleading" standards. (*See* UW Mem. 5–7.)  Plaintiffs do not even attempt to explain how *Suprema* remains valid after *Twombly*.

In sum, plaintiffs identify no decision deeming sufficient for Section 11 standing purposes an equivocal allegation of a purchase "in and/or traceable to" a secondary offering.  This mandates dismissing the Section 11 claim.

---

[5] *See West Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 668 (N.D. Ill. 2020) (concluding complaint pleaded standing by alleging plaintiffs "purchased shares *in* the SPO"); *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109, 1113 (E.D. Cal. 2017) (finding standing adequately pleaded where plaintiffs alleged they "purchased [] securities ... *in* the secondary offering").

[6] 2017 WL 1658822 (D.N.J. Apr. 28, 2017).

[7] *Valeant*, 2017 WL 1658822, at *13 (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 257 n.7 (3d Cir. 2006)).

*Section 12*:  Section 12 standing likewise requires a plaintiff to plead and prove a purchase in the challenged offering.  (UW Mem. 8–9.)  In response, plaintiffs again rely on *Valeant* to argue that they have sufficiently pleaded a purchase in the SPO (Opp. 60), but as explained above, that decision rests on outdated standards (*see* p. 3, *supra*).

Plaintiffs also argue that Section 12(a)(2) liability *can* attach to aftermarket transactions that are "subject to a prospectus delivery requirement."  (Opp. 60.) Numerous courts have held otherwise, concluding that aftermarket transactions cannot give rise to Section 12(a)(2) liability under any circumstances.[8]  Plaintiffs' Section 12(a)(2) claim dismissed for this reason alone.

Plaintiffs' prospectus-delivery-requirement argument is also a red herring. SEC regulations exempt from that requirement transactions where "the issuer is subject, immediately prior to the time of filing the registration statement, to the reporting requirements of section 13 or 15(d) of the Securities Exchange Act of 1934."  17 C.F.R. 230.174(b).  As the SPO prospectus supplement disclosed,

---

[8] *See, In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 216, 244 (E.D.N.Y. 2002) ("[W]hat is now the predominate conclusion [is] that purchasers in . . . secondary market offerings are precluded from bringing actions under Section 12(a)(2).") (collecting cases and rejecting *Feiner v. SS&C Technologies, Inc.*, 47 F. Supp. 2d 250 (D. Conn. 1999) (cited in Opp. 60)); *Primo v. Pacific BioSciences of California, Inc.*, 940 F. Supp. 2d 1105, 1124 (N.D. Cal. 2013) (rejecting *Feiner* and concluding "§ 12 is limited to shares purchased pursuant to a public offering and, therefore, does not extend to any aftermarket transactions").

Kornit was subject to those reporting requirements, and it filed an annual report on Form 20-F.[9]  Thus, no prospectus-delivery requirement applied to secondary market transactions in Kornit's securities, consistent with the CAC not pleading the existence of any such requirement.  This further confirms that Section 12(a)(2) liability can only apply to purchases occurring in the SPO itself.[10]

## II.   THE CAC'S SECURITIES ACT ALLEGATIONS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION.

### A.   Plaintiffs Identify No Factual Allegations Supporting a Claim that Any Challenged Statement in the SPO Materials Was False.

Plaintiffs do not contest that their Securities Act allegations do not incorporate the CAC's Exchange Act allegations and therefore must be judged on their own (*see* UW Mem. 10).  But plaintiffs' effort to defend their Securities Act falsity allegations is as conclusory as those allegations, relying on arguments that (i) unspecified "errors or defects were already in existence" (Opp. 61 (citing CAC ¶¶ 289 (alleging risks "had already materialized," without any underlying facts),

---

[9]  Sushon Declaration, Ex. A at S-26 ("Under the Exchange Act, we are required to file annual reports and certain special reports with, and to furnish current reports and certain other information to the SEC."); Polubinski Declaration, Ex. 1 at cover (indicating Kornit was "required to file reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934").

[10] *See Caiafa v. Sea Containers Ltd.*, 331 Fed. Appx. 14, 17 (2d Cir. 2009) ("Plaintiffs have failed to allege that they purchased securities under circumstances requiring the delivery of a prospectus and therefore fail to state a claim even under *Feiner's* reasoning.").

290–92 (alleging defects made Kornit's products "less productive" and more expensive than competitors', without specifying defects)); (ii) Kornit could not adequately service its customers because it was trying to profit from its service centers, without explaining what Kornit was actually doing or how any such activity impaired its customer service (Opp. 61); and (iii) quotations that Kornit was "figuring out the integration" and "stabilizing the platform," without providing the speaker, time, place, or circumstances of the statements. (*id*. 61 (citing CAC ¶ 296).)

The questions the Underwriter Defendants posited (UW Mem. 10–11) therefore remain unanswered:

> How . . . did the risk of defects in Kornit's products allegedly materialize?  What were the significant defects that allegedly elevated the cost of ownership of Kornit's products?  What was Kornit doing to 'turn its service business into a profit center' and how did that supposedly impair its ability to service customers?

Without answers to these basic questions, the Securities Act claims do not pass the plausibility test.

## B. The Challenged Statements in the SPO Materials Are Not Actionable in Any Event.

As the Kornit Defendants showed in their opening brief, the Securities Act claims fail independently because the allegedly omitted information was disclosed, and the challenged statements are inactionable corporate puffery or opinions or protected forward-looking statements.  (*See* UW Mem. 11 (incorporating Kornit

Mem. 45–49).)  While plaintiffs' Opposition addresses these arguments to the extent that they are directed to statements that are the subject of the Exchange Act claims, they do not address the challenged statements from the offering materials. (Kornit Reply 26–27.)  Plaintiffs therefore concede these arguments.[11]

## CONCLUSION

The CAC fails to satisfy basic Securities Act pleading standards, relying on equivocal standing and conclusory falsity allegations.  And plaintiffs fail to address other arguments establishing that the challenged statements are inactionable as a matter of law.  The Securities Act claims should be dismissed with prejudice.

Dated:   April 1, 2024          Respectfully submitted,

/s/ Allen W. Burton
Allen W. Burton
Jonathan Rosenberg (pro hac vice)
William Sushon (pro hac vice)
O'MELVENY & MEYERS LLP
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
aburton@omm.com
jrosenberg@omm.com
wsushon@omm.com

Counsel for Defendants Citigroup Global Markets Inc., Barclays Capital Inc., Goldman Sachs & Co. LLC, and Morgan Stanley & Co. LLC

---

[11] See Sang Geoul Lee v. Won II Park, 720 Fed. App'x 663, 666 (3d Cir. 2017) (failure to respond to an argument acts as concession); Johnson v. East Orange VA Med. Ctr., 2023 WL 2770423, at *5 (D.N.J. Apr. 4, 2023) (same).