**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re Kornit Digital Ltd. Securities Litigation | No. 2:23-cv-00888-MCA-AME<br>*Document Filed Electronically*<br><br><u>CLASS ACTION</u><br><br>**ORAL ARGUMENT REQUESTED**<br><br>**RETURN DATE:**<br>January 20, 2026 |

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

OF COUNSEL:
Edmund Polubinski III (*pro hac vice*)
Dana Seshens (*pro hac vice*)
Daniel J. Schwartz (*pro hac vice*)
Marie Killmond (*pro hac vice*)
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
edmund.polubinski@davispolk.com
dana.seshens@davispolk.com
daniel.schwartz@davispolk.com
marie.killmond@davispolk.com

Samuel I. Portnoy
Michael V. Caracappa
**FBT GIBBONS LLP**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
sportnoy@fbtgibbons.com
mcaracappa@fbtgibbons.com

*Counsel for Kornit Digital Ltd., Ronen Samuel, and Alon Rozner*

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ........................................................................................................2

I.     Plaintiffs' Purported Corrective Disclosures Did Not Correct the Service Contract Statement ........................................................................4

II.     Plaintiffs Have Not Pled Loss Causation Under a Materialization-of-the Risk Theory.................................................................................................9

III.     Plaintiffs Cannot Amend the Complaint in Their Opposition or Otherwise to Remedy Their Deficient Loss Causation Allegations .............10

CONCLUSION...................................................................................................14

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*Bartesch v. Cook*,
  941 F. Supp. 2d 501 (D. Del. 2013)...................................................................3

*In re Daou Sys., Inc.*,
  411 F.3d 1006 (9th Cir. 2005) ...........................................................................8

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
  343 F.3d 189 (2d Cir. 2003) ..............................................................................8

*In re Emisphere Technologies, Inc. Sec. Litig.*,
  2025 WL 2779107 (D.N.J. Sept. 30, 2025).....................................................3, 14

*In re EQT Corp. Sec. Litig.*,
  504 F. Supp. 3d 474 (W.D. Pa. 2020)................................................................8

*In re Gilead Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ...........................................................................8

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
  2015 WL 4469143 (D.N.J. July 22, 2015) .......................................................5, 8

*Holland v. Standley*,
  2025 WL 2434230 (E.D. Pa. Aug. 21, 2025) .....................................................6

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007).................................................................3, 6

*Kinch v. Caulfield*,
  2024 WL 1653667 (D.N.J. Apr. 17, 2024).......................................................10

*In re Lehman Bros. Sec. & Erisa Litig.*,
  131 F. Supp. 3d 241(S.D.N.Y. 2015) ................................................................9

ii

*Leventhal v. Chegg, Inc.*,
2024 WL 3447516 (N.D. Cal. July 17, 2024) .....................................................8

*In re Merck & Co., Inc. Sec. Litig.*,
432 F.3d 261 (3d Cir. 2005). ...........................................................................13

*In re Merck & Co., Inc. Sec., Derivs. & ERISA Litig.*,
2011 WL 3444199 (D.N.J. Aug. 8, 2011) ..........................................................7

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) ...........................................................................10

*Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010) .....................................................................3

*In re RenovaCare, Inc. Sec. Litig.*,
2024 WL 2815034 (D.N.J. June 3, 2024) ...........................................................7

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
732 F. Supp. 3d 300 (S.D.N.Y. 2024). ...............................................................9

*In re Splunk Inc. Sec. Litig.*,
592 F. Supp. 3d 919 (N.D. Cal. 2022). ...............................................................8

*Telebrands Corp. v. Cooper & Dunham, LLP*,
2023 WL 2570154 (D.N.J. Mar. 20, 2023). ....................................................4, 5

*In re Tellium, Inc. Sec. Litig.*,
2005 WL 2090254 (D.N.J. Aug. 26, 2005). .........................................................6

*Vanderhoef v. China Auto Logistics Inc.*,
2021 WL 3260849 (D.N.J. July 30, 2021). ......................................................7, 8

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011). ...............................................................9

*Wu v. GSX Techedu Inc.*,
2023 WL 2207422 (D.N.J. Feb. 24, 2023) ..........................................................5

iii

## STATUTES & RULES

Fed. R. Civ. P. 8 .................................................................................................................3

Fed. R. Civ. P. 9 .................................................................................................................3

Fed. R. Civ. P. 12 ........................................................................................... 1, 2, 3

**\*\*\***

**Note on Citation Format:**  Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, ellipses, citations, and footnotes have been omitted.

References to DX__ correspond to the exhibits attached to the Declaration of Edmund Polubinski III in Support of Defendants' Motion for Partial Judgment on the Pleadings.  References to PX__ correspond to exhibits attached to the Declaration of James Harrod in Support of Plaintiffs' Opposition to Defendants' Partial Motion for Judgment on the Pleadings.

Terms not otherwise defined herein are defined as set forth in Defendants' Motion for Partial Judgment on the Pleadings.

## PRELIMINARY STATEMENT

Plaintiffs' Opposition does not dispute that both of the Complaint's alleged corrective disclosures were wholly silent on the issue of service contract length. Plaintiffs likewise do not seriously contend that they have pled or could plead that a previously undisclosed risk allegedly materialized on either disclosure date. Instead, faced with the Complaint's deficient loss causation allegations, the Opposition offers only unpled, unsupported speculation that the stock price decline following the July 2022 Disclosures bore some unstated connection to the Service Contract Statement—even though the July 2022 Disclosures said nothing about service revenue or the length of Kornit's service contracts.

But this speculative theory of loss causation is not pled in the Complaint. Plaintiffs cannot amend their deficient loss causation allegations in a brief in opposition to a Rule 12 motion. But, even if Plaintiffs now sought leave to amend their Complaint—having already declined the Court's most recent invitation to amend last year—there would be no basis to permit them to do so. None of the public statements the Opposition cites in support of Plaintiffs' speculative loss causation theory supports the notion that the July 2022 Disclosures had anything to do with the Service Contract Statement. In fact, the Opposition cites disclosures in Kornit's 2021 Annual Report that would have affirmatively and completely disclosed any allegedly withheld truth about service contract length *before* either

the May or the July 2022 Disclosures.  This precludes the possibility that the Service Contract Statement could have caused any losses as a result of either disclosure.

In light of Plaintiffs' irremediable pleading failure, it is unsurprising that they devote much of the Opposition to asking the Court not to address the merits of Defendants' motion for judgment on the pleadings (the "Motion").  But there is no dispute that the Motion is both timely and procedurally proper.  Although the Opposition complains that there have already been two Rule 12(b)(6) motions to dismiss, Plaintiffs do not and cannot dispute the black letter law that defendants may make a later motion under Rule 12(c), including on grounds not previously raised in a Rule 12(b)(6) motion.  Likewise, the Opposition contends that the relief requested on this Motion would not offer meaningful efficiencies.  This is wrong: dismissing claims related to the Service Contract Statement would undisputably shorten the relevant time period by a year.  But even if Plaintiffs were right, that would not provide a basis to deny the Motion.  To plead a claim for securities fraud, Plaintiffs must plead loss causation.  Because they have not done so as to the Service Contract Statement, their claim must be dismissed.

## ARGUMENT

As a procedural matter, Plaintiffs do not dispute that the Motion is timely, *see* Mot. 10, or that the Third Circuit has made clear that "Rule 12 permits filing a

2

Rule 12(c) motion on grounds that were available, but not previously raised, in a Rule 12(b)(6) motion," Mot. 11–12 (citing cases).

Nevertheless, the Opposition asks the Court to defer reaching the merits of Defendants' Motion until summary judgment, asserting that loss causation can sometimes be a fact-dependent inquiry.  But none of the cases Plaintiffs cite remotely suggests that a Court may overlook an obvious pleading failure on a Rule 12 motion, and courts in this Circuit can—and frequently do—dismiss claims for failure to plead loss causation.[1]  The Opposition also claims there would be no efficiency gained in dismissing claims related to the Service Contract Statement now.  Opp. 3–4.  But this too is not a basis to ignore a pleading failure.  And in any case, the relief requested *would* generate substantial efficiencies by shortening the alleged Class Period by a year, reducing the temporal scope of discovery, and streamlining the case for further proceedings.[2]

---

[1] *See, e.g.*, *Emisphere Techs., Inc. Sec. Litig.*, 2025 WL 2779107, at *9 (D.N.J. Sept. 30, 2025); *Bartesch v. Cook*, 941 F. Supp. 2d 501, 513 (D. Del. 2013); *Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 563 (D.N.J. 2010); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 332 (D.N.J. 2007).

[2] Plaintiffs also argue that the Court should analyze loss causation under Federal Rule of Civil Procedure 8, rather than under Rule 9(b)'s heightened pleading standard.  Opp. 12–13.  But Plaintiffs do not dispute that the majority of Circuits disagree with them, *see* Mot. 13 n.5, and they offer no basis to reject the reasoning of those courts.  Regardless, the Court here need not resolve that question as Plaintiffs' claim fails even under Rule 8.

I.     **Plaintiffs' Purported Corrective Disclosures Did Not Correct the Service Contract Statement**

To plead loss causation, Plaintiffs must identify corrective disclosures that "exposed the alleged fraud" or through which "the market learned" of the alleged fraud.  Mot. 13–14 (citing cases).  According to Plaintiffs, the alleged fraud as it related to the Service Contract Statement was that "[service] contracts were shorter in duration than represented and not being renewed."  Opp. 7.  Plaintiffs fail to plead loss causation because neither of their two alleged corrective disclosures—the May 2022 Disclosures and the July 2022 Disclosures—revealed this information.

Plaintiffs essentially concede this point.  The Opposition does not identify (nor could it) a single allegation in the Complaint that purports to tie the alleged declines in Kornit's stock price following the May and July 2022 Disclosures—the *only* alleged corrective disclosures—to any revelations about the length of service contracts or declines in service revenue.  The only paragraphs of the Complaint that Plaintiffs cite—Paragraphs 194 to 198—do not even mention the words "service contracts."  *See* Opp. 7–8.  Similarly, the "Loss Causation" section of the Complaint is silent about service contracts.  Compl. ¶¶ 284–85.

As to the May 2022 Disclosures, the Opposition does not even attempt to argue that they constituted a corrective disclosure as to the Service Contract Statement.  Thus, Plaintiffs have conceded that they do not.  *See, e.g.*, *Telebrands*

4

*Corp. v. Cooper & Dunham, LLP*, 2023 WL 2570154, at *6 (D.N.J. Mar. 20, 2023).  The Complaint itself affirmatively attributes the alleged stock price decline following the May 2022 Disclosures to other, different factors: news about a net loss in the quarter, weaker-than-expected revenue guidance, competition from M&R, and a loss of sales from Delta and Fanatics.  Compl. ¶¶ 183–91.

As to the July 2022 Disclosures—which announced a reduction in expected revenue for the ongoing quarter—Plaintiffs likewise do not dispute that they were completely silent on service contracts.[3]  Indeed, the Opposition itself acknowledges this, stating that the July 2022 disclosure of anticipated negative financial results did not "break out or detail service revenues specifically . . . , nor did it specifically quantify the underlying sources of the revenue decline."  Opp. 7.  Because the July 2022 Disclosures did not in any way suggest that the reduced revenue guidance was due to service contract lengths or otherwise was attributable to the supposed falsity of the Service Contract Statement, Plaintiffs' pleading does not "connect[] th[e]se negative financials to the alleged fraud."  Mot. 16 (citing *Wu v. GSX Techedu Inc.*, 2023 WL 2207422, at *15 (D.N.J. Feb. 24, 2023)).

---

[3] Contrary to Plaintiffs' insinuations, *see* Opp. 11, 17, the actual text of the July 2022 Disclosures is properly before the Court on this Motion because the July 2022 Disclosures were incorporated by reference into the Complaint, *see e.g.,* Compl. ¶ 194, and made in a securities filing that is properly the subject of judicial notice,  *see In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2015 WL 4469143, at *6 n.4 (D.N.J. July 22, 2015).

In the absence of anything on the face the July 2022 Disclosures, the Opposition offers only pure speculation that the July 2022 Disclosures had anything to do with the Service Contract Statement. This is both improper and legally insufficient, as the Motion explained. Mot. 14–18.

As an initial matter, Plaintiffs' speculation can be found nowhere at all in the Complaint. Nothing in the Complaint even remotely connects the Service Contract Statement to any corrective disclosure. This is a basic pleading failure that requires dismissal. Mot. 15–18. As discussed above, to plead loss causation, a complaint must identify a corrective disclosure that "reveal[s] [some]thing about the falsity" of the alleged prior misstatement, *Holland v. Standley*, 2025 WL 2434230, at \*19 (E.D. Pa. Aug. 21, 2025); it cannot merely allege a "drop[] in stock price following an announcement of bad news"—here, reduced revenue guidance—"that does not disclose the fraud," *In re Tellium, Inc. Sec. Litig.*, 2005 WL 2090254, at \*4 (D.N.J. Aug. 26, 2005).

The Opposition emphasizes that a corrective disclosure need not "[p]erfectly [m]irror" an alleged misrepresentation. Opp. 16. But Defendants never argued a mirror-image was necessary—only that Plaintiffs must plead a "causal link between the disclosure of alleged fraud and the economic harm." *Intelligroup*, 529 F. Supp. 2d at 295. And the Complaint wholly fails to do this. It says literally

6

nothing about any link between the Service Contract Statement and any corrective disclosure.[4]

None of the cases Plaintiffs cite is at all inconsistent with *Intelligroup*, nor do those cases otherwise relieve Plaintiffs of the burden of pleading facts to support *some* link between the allegedly misleading statement and a corrective disclosure.  For example, the complaint in *In re Merck & Co., Inc. Securities, Derivative. & ERISA Litigation*, 2011 WL 3444199 (D.N.J. Aug. 8, 2011), alleged an obvious link: the alleged misstatements concerned a drug's hidden risks, and the corrective disclosures consisted of studies and articles that detailed those risks, followed by the withdrawal of the drug from the market.  *Id*. at *30–34; *see also In re RenovaCare, Inc. Sec. Litig.*, 2024 WL 2815034, at *1–5 (D.N.J. June 3, 2024) (defendants engaged in "longstanding, concealed, and wide-reaching fraudulent stock promotion scheme" that was subsequently revealed to the public by, *inter alia*, the disclosure of an SEC litigation *relating to the scheme*); *Vanderhoef v. China Auto Logistics Inc.*, 2021 WL 3260849, at *1–2 (D.N.J. July 30, 2021) (misleading statement involving a failure "to disclose related party transactions" corrected by disclosure of "material weakness[es] in internal controls and

---

[4] Plaintiffs' failure of pleading here has nothing to do with the materiality of the Service Contract Statement, as the Opposition wrongly contends, Opp. 18. Rather it is a failure to allege any connection between the statement and the alleged corrective disclosures.

7

procedures over identifying and *reporting certain relationships*”); *In re EQT Corp. Sec. Litig.*, 504 F. Supp. 3d 474, 501–02 (W.D. Pa. 2020) (misstatements regarding, *inter alia*, feasibility of drilling new natural gas wells revealed by disclosure of difficulty drilling wells); *In re Hertz Global Holdings, Inc. Sec. Litig.*, 2015 WL 4469143, at \*2 (D.N.J. July 22, 2015) (“the reasons cited for the reduction in earnings” that allegedly caused losses “track[ed] the [] developments” described in alleged misrepresentations).[5]

---

[5] Plaintiffs also cite a number of other inapplicable, out-of-circuit decisions that, unlike here, actually *plead* a link between the allegedly misleading statements and the corrective disclosures. *See, e.g.*, *In re Gilead Sec. Litig.*, 536 F.3d 1049, 1050, 1054 (9th Cir. 2008) (loss causation pled where company omitted that improper off-label marketing was substantial source of demand; truth revealed when company disclosed “lower end-user demand” due to reduction in off-label prescriptions); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1017, 1026 (9th Cir. 2005) (loss causation pled where alleged misstatements omitted that defendants “systematically reported revenue[] before it was earned”; truth revealed when defendants disclosed millions of dollars in “unbilled receivables—the direct result of prematurely recognizing revenue”); *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 191, 197 (2d Cir. 2003) (loss causation pled where company allegedly failed to disclose “effective[] control[]” by an individual barred from the securities industry due to prior misconduct; truth revealed when it was disclosed that the same individual engaged in similar misconduct at the company); *Leventhal v. Chegg, Inc.*, 2024 WL 3447516, at \*3 (N.D. Cal. July 17, 2024) (loss causation pled where online learning company failed to disclose that its growth relied on widespread student cheating; truth revealed when *analysts expressly linked* company’s decreased revenue guidance to “return to in-person learning where cheating . . . was less feasible”); *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 950, 953 (N.D. Cal. 2022) (loss causation pled where company misled investors regarding “the suspension in marketing investments, the hiring freeze of sales personnel, and the layoff of [a] ‘new logo’ team”; truth revealed when CFO *attributed missed earnings* to those factors).

8

## II.   Plaintiffs Have Not Pled Loss Causation Under a Materialization-of-the Risk Theory

The Opposition does not seriously argue that the Complaint has pled loss causation under a materialization of the risk theory.  Indeed, it does not identify any undisclosed *risk* that the May or July 2022 Disclosures allegedly revealed.  As noted above and below, the Opposition contends—with only whole-cloth speculation—that the July 2022 Disclosure somehow revealed something about how "[service] contracts were shorter in duration than represented and not being renewed."  Opp. 7.  But even assuming that were true— and it is not, even setting aside all of the other infirmities in Plaintiffs' unpled theory—this information still would concern an alleged *false statement of fact*, not an *undisclosed risk*.  For that reason, the materialization of the risk theory would have no application here,[6] even if the Third Circuit recognized that theory, which it indisputably does not—and

---

[6] Unlike here, the cases cited in the Opposition did involve allegedly undisclosed risks, not alleged facts.  *See, e.g.*, *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.,* 732 F. Supp. 3d 300, 325 (S.D.N.Y. 2024) (materialization of the risk theory sufficed to plead loss causation where plaintiffs "plausibly linked each disappointing earnings report" to specified "risks concealed by the fraud"); *In re Lehman Bros. Sec. & Erisa Litig.*, 131 F. Supp. 3d 241, 264 (S.D.N.Y. 2015) (denying summary judgment where evidence showed that allegedly concealed transactions concealed specified risk, namely "the extent of [bank's] exposure to troubled asset classes"); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011) (denying post-trial motion for judgment as a matter of law where trial evidence sufficiently showed that specified events were materializations of liquidity risk concealed by misrepresentations).

9

Plaintiffs do not contend otherwise, Mot. 18.[7]

### III. Plaintiffs Cannot Amend the Complaint in Their Opposition or Otherwise to Remedy Their Deficient Loss Causation Allegations

In the face of their deficient pleading, Plaintiffs effectively try to amend their Complaint in their Opposition. The Opposition relies on Kornit's 2021 20-F and Kornit's Q2 2022 quarterly results released in August 2022, focusing on language that was neither cited nor referenced in the Complaint, to try to support Plaintiffs' unpled assertion that the July 2022 Disclosures revealed something about the Service Contract Statement.

As an initial matter, this is procedurally improper. *See, e.g.*, *Kinch v. Caulfield*, 2024 WL 1653667, at *3 (D.N.J. Apr. 17, 2024). Any further opportunity to amend would be particularly inappropriate here, given that Plaintiffs have already amended twice and expressly decided not to do so following the Court's most recent motion to dismiss ruling. *See* Dkt. 79.

More fundamentally, Plaintiffs' new arguments—even if they were properly pled—would fail on the merits. Plaintiffs rely on two new disclosures that are not

---

[7] Plaintiffs contend that the distinction between a corrective disclosure and materialization of the risk is "irrelevant." Opp. 19 (citing *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018)). But *Mineworkers* is not a Third Circuit decision, and—in any event—it still required plaintiffs to show that "the very facts misrepresented or omitted . . . were a substantial factor in causing" their alleged loss, 881 F.3d at 753, which Plaintiffs have not done here, as explained in Point I above and Point III below.

themselves alleged to be corrective and that occurred, respectively, months before and after the July 2022 Disclosures.  Neither remedies Plaintiffs' loss causation pleading failure.

*First*, Plaintiffs point to a disclosure in Kornit's 2021 20-F Report, filed on March 30, 2022, that its service contract "attachment rate" was substantially lower at the end of 2021 than it had been at the end of 2020.  Opp. 6.  Plaintiffs then hypothesize that this decline (i) was due to customers' nonrenewal of single year service contracts, which the Service Contracts Statement purportedly concealed, and (ii) caused the decline in revenues discussed in the July 2022 Disclosures.  *Id*. at 2.  None of this is pled in the Complaint.[8]

If this theory of causation *had* been pled in the Complaint, however, it would affirmatively preclude the inference that the Service Contract Statement caused Plaintiffs' alleged losses in July 2022.  The substantial year-over-year decline in attach rate reported in the 2021 20-F inherently revealed that contracts could expire within one year—i.e., were "shorter in duration than [Kornit allegedly] represented"—and that a substantial portion were "not being renewed."  *See* Opp. 7.  (Of course, the fact that customers could choose not to renew service contracts

---

[8] The only references to the 2021 20-F Report in the Amended Complaint (misdated to March 25, 2022) once again do not mention service contracts or attachment rates and do not allege that the 2021 20-F Report was a corrective disclosure at all.  Compl. ¶¶ 279–83.

was disclosed well before even March 2022. *See* Mot. 5.) *That is precisely what Plaintiffs claim the Service Contracts Statement misrepresented. See* Opp. 7. Because the 2021 20-F revealed the supposedly concealed information, there would have been nothing more to disclose or correct in July 2022—and Plaintiffs certainly do not explain how the July 2022 Disclosures, which said nothing about service contracts or the service business, *see* Point I, *supra*, somehow made the falsity of the Service Contract Statement more "ascertain[able]," *id*. Even accepting as true Plaintiffs' conclusory assertion that some portion of the July 2022 guidance reduction was attributable to the reduced attach rate, a loss arising from a *disclosed* risk or circumstance is not actionable. *See* Mot. 20 (collecting cases).

Even if Plaintiffs could overcome this legal hurdle (and they cannot), they offer no support for the implausible inference that any part of the July 2022 guidance reduction was attributable to the reduced attach rate. The 2021 20-F Report—the very document reporting the reduced attach rate in 2021 compared to 2020—demonstrates that service revenues had actually *increased* by $11 million in 2021 compared to 2020. *Compare* DX2 at 54 (disclosing $39.4 million in 2021) *with* DX1 at 46 (disclosing $28.4 million in 2020). Plaintiffs offer no explanation for how an alleged service contract trend that coincided with *increased* service revenues can adequately plead loss causation here.

*Second*, although cited or referenced nowhere in the Complaint, Plaintiffs now point to Kornit's Q2 2022 quarterly results released in August 2022, which reflected a roughly $209,000—or 1.9%—dip in service revenue compared to the prior quarter.  Opp. 17.  This, Plaintiffs claim, "confirm[ed] that the revenue miss announced in July 2022 was caused, in part, by a decrease in service department revenues." *Id.*  But that makes no sense.  Putting aside that this theory is not pled in the Complaint, even if the Court were to consider it, it does not support Plaintiffs' position.  Kornit's Q2 2022 earnings disclosure in August 2022 in no way attributed the July 2022 revenue miss—or any revenue miss for that matter—to anything having to do with service contracts.  Plaintiffs plead nothing to infer otherwise.  Moreover, a quarter-over-quarter drop in service revenue of $209,000 cannot plausibly be the cause of a $27 to $37 million dollar revenue miss during the quarter, *compare* Compl. ¶ 194 (alleging that Kornit had projected $85 to $95 million dollars in revenue), *with* PX1 (stating that Kornit's final revenue was $58.1 million), nor does the disclosure of a $209,000 drop in service revenue reveal anything at all about the supposed falsity of the Service Contract Statement.[9]

---

[9] Notably, the release of Kornit's earnings in August 2022 was followed by an *increase* in Kornit's stock price.  *See* Yahoo Finance, Kornit Nasdaq Real Time Price (August 10–12 2022), *available at* https://finance.yahoo.com/quote/KRNT/history/?period1=1660089600&period2=1660262400; *see also In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 264 n.3 (3d Cir. 2005) (stock prices properly subject to judicial notice).

13

In short, even if the entirely new theories of loss causation that Plaintiffs improperly introduce in their Opposition were before the Court, they would not save Plaintiffs' inadequate loss causation allegations here.

## CONCLUSION

Defendants respectfully request that the Court dismiss all claims relating to the Service Contract Statemen with prejudice.  Plaintiffs have had three opportunities to amend their Complaint (the latest of which they declined), and any amendment would be futile, *see supra* Point III.  *See Emisphere Techs.*, 2025 WL 2779107, at *9 (dismissing securities fraud case with prejudice for failure to plead loss causation where "further amendment would be futile[.]").[10]

---

[10] For the avoidance of doubt, Defendants do not "concede[] the causal connection between the four other misstatements and Kornit's stock price declines in May and July of 2022."  Opp. 3.  Rather, Defendants do not challenge the adequacy of Plaintiffs' loss causation allegations with respect to these alleged misstatements at this stage of the case.

Dated:  January 7, 2026

Respectfully submitted,

**FBT GIBBONS LLP**

*s/ Samuel I. Portnoy*
Samuel I. Portnoy
Michael V. Caracappa
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
sportnoy@fbtgibbons.com
mcaracappa@fbtgibbons.com

**DAVIS POLK & WARDWELL LLP**

Edmund Polubinski III (*pro hac vice*)
Dana Seshens (*pro hac vice*)
Daniel J. Schwartz (*pro hac vice*)
Marie Killmond (*pro hac vice*)
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
edmund.polubinski@davispolk.com
dana.seshens@davispolk.com
daniel.schwartz@davispolk.com
marie.killmond@davispolk.com

*Counsel for Kornit Digital Ltd., Ronen Samuel, and Alon Rozner*

15